UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| CAROL DIANE SYDNOR, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. 4:21-cv-00003 |
| § | |
| PHH MORTGAGE CORPORATION, f/k/a § | With Jury Demand Endorsed |
| OCWEN LOAN SERVICING, d/b/a/ PHH § | |
| MORTGAGE SERVICES, § | |
| § | |
| Defendant. § | |

## COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

Plaintiff Carol Diane Sydnor ("Plaintiff"), by and through counsel, for her Complaint against Defendant PHH Mortgage Corporation f/k/a Ocwen Loan Servicing and d/b/a PHH Mortgage Services ("Defendant"), states as follows:

### I. INTRODUCTION

1. Defendant, a mortgage servicer, engaged in willful, malicious, coercive, deceptive and harassing actions against Plaintiff in furtherance of Defendant's efforts to illegally collect a debt from Plaintiff she did not legally owe, by sending Plaintiff numerous billing statements, notices and correspondences demanding payment from Plaintiff or actions to coerce her payment. Over three years ago, the debt was discharged as to Plaintiff's personal liability in her prior bankruptcy case, effectuating the permanent discharge injunction prohibiting all *in personam* collection actions on the discharged debt, and the subject real property collateral had been surrendered and vacated by Plaintiff over 12 years ago. Moreover, Plaintiff has previously brought and settled two lawsuits against Defendant for taking the same type of post-discharge illegal

collection activity against her as alleged here and after she had sent numerous cease and desist requests. Despite Defendant's knowledge of the foregoing, Defendant still took its actions at issue and illegally tried to collect the discharged debt from Plaintiff personally, in accordance with its illegal design, practices and procedures, as specified in its policies and procedures, to profit by harassing and deceiving unsophisticated debtors.

2. Specifically, Plaintiff claims Defendant violated: 1) Tex. Fin. Code § 392.001 *et seq.,* known as the Texas Debt Collection Act ("TDCA"); 2) Plaintiff's common law privacy rights; 3) the Fair Debt Collection Practices Act (the "FDCPA"), 15 U.S.C. §§ 1692 *et seq.*; and 4) the discharge injunction of the United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division. Plaintiff seeks to recover from Defendant actual, statutory, and punitive damages, and legal fees and expenses.

## II. PARTIES

3. Plaintiff is a natural person residing in Tarrant County, Texas and a "consumer," as defined by the TDCA, Tex. Fin. Code § 392.001(1), and the FDCPA, 15 U.S.C. § 1692a(3).

4. Defendant is a foreign limited liability company that may be served by delivering a summons to its registered agent, Corporation Service Company dba CSC – Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, TX 78701-3218.

5. Defendant is a "creditor," "debt collector," and/or "third-party debt collector" under the TDCA, Tex. Fin. Code §§ 392.001(3), (6) and (7), and the FDCPA, 15 U.S.C. § 1692(6).

6. The debt Defendant was attempting to collect from Plaintiff was a "consumer debt," as defined by the TDCA, Tex. Fin. Code § 392.001(2), and the FDCPA, 15 U.S.C. § 1692.

## III. JURISDICTION AND VENUE

7. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1334, and 1367, and 15 U.S.C. §§ 1681p and 1692, *et seq*.

8. Venue is proper this district because Defendant transacts business in this district, Plaintiff filed her bankruptcy in this district, and a substantial part the conduct complained of occurred in this district.

### IV. Factual Allegations

**A. Years Prior to Filing Her Bankruptcy Case, Plaintiff Surrendered and Vacated the Collateral/Real Property.**

9. In or about July 2008, Plaintiff surrendered and permanently vacated the real property collateral for the subject debt.

10. On June 13, 2017, Plaintiff filed a Chapter 7 bankruptcy in case number 17-42483-rfn7 (the "Bankruptcy Case") in the United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division (the "Bankruptcy Court").

11. On **"SCHEDULE D – CREDITORS HOLDING SECURED CLAIMS"** ("Schedule D") filed with her bankruptcy petition, Plaintiff listed Citibank Equity Line of Credit ("Citibank"), and Greenpoint Mortgage Funding Inc. ("Greenpoint") as creditors for Account or Loan Number xxxxxx2850, (the "Account"), a secured claim and debt, secured by a lien on real property located at 1857 Central Ave, Bridgeport, CT 06610 (the "Property").

12. In Schedule "**E/F: Creditors Who Have Unsecured Claims**" Plaintiff listed Ocwen Loan Servicing ("Ocwen") as a Nonpriority Unsecured Creditor, noting it was "Collecting for – Greenpoint Mortgage."

13. Plaintiff listed the Property as surrendered on the "<u>Official Form 108</u> **Statement of Intention for Individuals Filing Under Chapter 7**" ("Statement of Intention") filed with her bankruptcy petition and she had, in fact, already permanently vacated the Property almost nine years earlier in 2008.

14. A true and correct copy of Plaintiff's Statement of Intention is attached hereto as Exhibit "A."

15. On or about June 16, 2017, the Bankruptcy Noticing Center for the Bankruptcy Court sent a copy of the "<u>Official Form 209A (For Individuals or Joint Debtors)</u> **Notice of Chapter 7 Bankruptcy Case – No Proof of Claim Deadline**" ("341 Notice"), to creditors in the Bankruptcy Case, as well as Defendant, operating as Ocwen, by first-class mail.  The 341 Notice warned all creditors, in conspicuous language, against violating the automatic stay imposed by 11 U.S.C. § 362.  The 341 Notice sent to Defendant was not returned by the Postal Service, creating a presumption it was received by Defendant.

16. A true and correct redacted copy of the 341 Notice is attached hereto as Exhibit "B."

**B.    The Subject Debt Was Discharged as to Plaintiff's Personal Liability in Her Bankruptcy Case.**

17. On October 12, 2017, the Bankruptcy Court issued an "**Order of Discharge**" ("Discharge Order"), granting Plaintiff a discharge in her Bankruptcy Case as to pre-petition debts, which included, in part, the debt on the Account.  The Discharge Order was entered and filed on October 15, 2017.  The Discharge Order followed Official Form 318, including the explanatory language contained therein.  The Discharge Order discharged Plaintiff from any liability for the debt created by the Account.  Included with the Discharge Order was an "**Explanation of Bankruptcy Discharge in a Chapter 7 Case**," explaining that the general injunction prohibiting any attempt to collect discharged debts, warning all creditors, in conspicuous language, that "**Creditors cannot collect discharged debts**" and that "Creditors cannot contact the debtors by mail, phone, or otherwise in any attempt to collect the debt personally" and "Creditors who violate this order can be required to pay debtors damages and attorney's fees."

-4-

18.    A true and correct redacted copy of the Discharge Order is attached hereto as Exhibit "C."

19.    As evidenced by a Certificate of Notice for the Discharge Order filed in Plaintiff's Bankruptcy Case on October 12, 2017, the Bankruptcy Noticing Center sent a copy of the Discharge Order to Defendant, operating as Ocwen, by electronic transmission and first-class mail on October 15, 2017, which were not returned; this constituted notice to Defendant of the discharge granted in Plaintiff's Bankruptcy Case and the replacement of the automatic stay with the discharge injunction imposed by 11 U.S.C. § 524(a).

20.    At no time during the pendency of Plaintiff's Bankruptcy Case did any person or entity object to or dispute the details or completeness of the claim on the Account listed on Schedule "D" to Plaintiff's Petition.

21.    At no time did Plaintiff reaffirm the debt on the Account with any person or entity.

22.    At no time did the Bankruptcy Court declare the debt on the Account to be non-dischargeable.

**C.    Defendant Obtained Default Foreclosure Order, but Dismissed the Case.**

23.    On May 16, 2018, the Superior Court of the Judicial District of Fairfield County at Bridgeport, Connecticut signed a default order in a foreclosure action against Plaintiff related to the Property, in Case Number FBTCV1860781016S, *HSBC Bank USA, National Association, As Trustee For Merrill Lynch Mortgage Investors, Inc., Mortgage Pass-Through Certificates, Mana Series 2007-al vs. Sydnor, Carol D. et.al.* (the "Foreclosure Suit"). Although Plaintiff did not appear and a default was entered, the Court, surprisingly, dismissed the case on March 28, 2019 for lack of prosecution.

**D.     Post-Discharge, Plaintiff Brought Her First Prior Lawsuit Against Defendant Alleging Defendant Illegally Tried to Collect the Discharged Debt from Her Personally.**

24.     After the subject debt was discharged and after Plaintiff's cease and desist requests to Defendant, then servicing the Account as Ocwen, Defendant sent Plaintiff statements, correspondences and notices on the Account, which Plaintiff claimed was in furtherance of its *in personam* collection attempts against her and in violation of the Fair Credit Reporting Act, the Texas Finance Code, Texas common law, the automatic stay of 11 U.S.C. § 362, and the discharge injunction of 11 U.S.C. § 524.  This eventually resulted in Plaintiff filing a prior lawsuit against Defendant, styled, *Carol Sydnor v. Ocwen Loan Servicing, LLC*, Civil Action No. 3:18-cv-02422-M, in the United States District Court for the Northern District of Texas, Dallas Division (hereinafter to be referred to as the "First Lawsuit").

25.     On or about March 6, 2019, the First Lawsuit was settled by the parties.

**E.     Post-Discharge and After the First Lawsuit Between the Parties had been Settled, Defendant Continued Making Harassing and Coercive Contacts with Plaintiff by Sending Her Statements, Notices and Correspondence on the Account, in Furtherance of its Illegal Attempts to Collect the Discharged Debt from Her Personally.**

26.     Many years after Plaintiff had permanently vacated the Property; long after the discharge of the debt, and after the settlement of the First Lawsuit, Defendant, remarkably, continued to send Plaintiff billing statements, notices and correspondence on the discharged Account, attempting to coerce or deceive Plaintiff to make payments on the discharged debt, in whole or in part, or take actions to benefit Defendant.

27.     On or about May 8, 2019, Defendant sent Plaintiff a notice on the Account advising her that Ocwen had joined forces with PHH Mortgage Services, and would be operating as one company, "PHH Mortgage Services (PHH)" to service the Account, as Ocwen and PHH had merged into one entity, PHH.

28. On October 28, 2019, Plaintiff alleged new violations against Defendant of the Texas Finance Code, Texas common law, the Fair Debt Collection Practices Act, and the discharge injunction of 11 U.S.C. § 524. Those disputes are more fully set forth in the pleadings filed in the United States District Court for the Northern District of Texas, Dallas Division, entitled *Carol Sydnor v. PHH Mortgage Corporation f/k/a Ocwen Loan Servicing, d/b/a PHH Mortgage Services*, bearing Civil Action No. 19-CV-00908-O (hereinafter to be referred to as the "Second Lawsuit").

29. On or about February 21, 2020, Plaintiff and Defendant reached a settlement of the Second Lawsuit wherein the Plaintiffs agreed not to assert any new claims against Defendant for illegal contacts for ninety days, and the case was dismissed.

30. Nevertheless, Defendant continued to send Plaintiff correspondence on the Account, as follows:

31. On or about July 16, 2020, Defendant sent Plaintiff a monthly mortgage statement, complete with coupon and return envelope, representing that a "Payment Amount" of $237,837.92 was due and owing by August 1, 2020, which included the regular monthly payment of $1,273.64 and $30,569.34 in "Assessed Expenses," even though the Property had been surrendered, the debt discharged, and two lawsuits had been filed and settled making it clear Plaintiff did not want to receive statements or other correspondence from PHH. The statement goes on to advise Plaintiff that "[t]his communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose," and warns her "[a]s may be required by state law, you are hereby notified that a negative credit report reflecting on an accountholder's credit record may be submitted to a credit reporting agency if credit obligation terms are not fulfilled."

32. A true and correct redacted copy of the July 16, 2020 statement Defendant sent to Plaintiff is attached hereto as Exhibit "D."

33. On or about August 14, 2020, Defendant sent Plaintiff a monthly mortgage statement, complete with coupon and return envelope, representing that a "Payment Amount" of $233,525.77 was due and owing by September 1, 2020, which included the regular monthly payment of $1,273.64 and $24,983.55 in "Assessed Expenses," even though the Property had been surrendered, the debt discharged, and two lawsuits had been filed and settled making it clear Plaintiff did not want to receive statements or other correspondence from PHH. The statement goes on to advise Plaintiff that "[t]his communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose," and warns her "[a]s may be required by state law, you are hereby notified that a negative credit report reflecting on an accountholder's credit record may be submitted to a credit reporting agency if credit obligation terms are not fulfilled."

34. A true and correct redacted copy of the August 14, 2020 statement Defendant sent to Plaintiff is attached hereto as Exhibit "E."

35. On or about September 16, 2020, Defendant sent Plaintiff a monthly mortgage statement, complete with coupon and return envelope, representing that a "Payment Amount" of $234,814.41 was due and owing by October 1, 2020, which included the regular monthly payment of $1,273.64 and $24,998.55 in "Assessed Expenses," even though the Property had been surrendered, the debt discharged, and two lawsuits had been filed and settled making it clear Plaintiff did not want to receive statements or other correspondence from PHH. The statement goes on to advise Plaintiff that "[t]his communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose," and warns her "[a]s may be required by state law, you are hereby notified that a negative credit report reflecting on an accountholder's credit record may be submitted to a credit reporting agency if credit obligation terms are not fulfilled."

36. A true and correct redacted copy of the September 16, 2020 statement Defendant sent to Plaintiff is attached hereto as Exhibit "F."

37. On or about September 21, 2020, Defendant sent Plaintiff "Your Annual Escrow Statement" representing that: "Effective November 2020, your new monthly mortgage payment will be: $1,272.25" and included a long list of fees charged over the past year for hazard insurance and taxes. The statement advises Plaintiff that "[t]his communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose," and warns her "[a]s may be required by state law, you are hereby notified that a negative credit report reflecting on an accountholder's credit record may be submitted to a credit reporting agency if credit obligation terms are not fulfilled."

38. A true and correct redacted copy of the September 21, 2020 Annual Escrow Statement Defendant sent to Plaintiff is attached hereto as Exhibit "G."

39. On or about October 16, 2020, Defendant sent Plaintiff a monthly mortgage statement, complete with coupon and return envelope, representing that a "Payment Amount" of $237,172.18 was due and owing by November 1, 2020, which included the regular monthly payment of $1,272.25 and $26,084.07 in "Assessed Expenses," even though the Property had been surrendered, the debt discharged, and two lawsuits had been filed and settled making it clear Plaintiff did not want to receive statements or other correspondence from PHH. The statement goes on to advise Plaintiff that "[t]his communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose," and warns her "[a]s may be required by state law, you are hereby notified that a negative credit report reflecting on an accountholder's credit record may be submitted to a credit reporting agency if credit obligation terms are not fulfilled."

40. A true and correct redacted copy of the October 16, 2020 statement Defendant sent to Plaintiff is attached hereto as Exhibit "H."

41. On or about November 16, 2020, Defendant sent Plaintiff a monthly mortgage statement, complete with coupon and return envelope, representing that a "Payment Amount" of $237,267.70 was due and owing by December 1, 2020, which included the regular monthly payment of $1,196.10 and $24,983.49 in "Assessed Expenses," even though the Property had been surrendered, the debt discharged, and two lawsuits had been filed and settled making it clear Plaintiff did not want to receive statements or other correspondence from PHH. The statement goes on to advise Plaintiff that "[t]his communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose," and warns her "[a]s may be required by state law, you are hereby notified that a negative credit report reflecting on an accountholder's credit record may be submitted to a credit reporting agency if credit obligation terms are not fulfilled."

42. A true and correct redacted copy of the November 16, 2020 correspondence Defendant sent to Plaintiff is attached hereto as Exhibit "I."

## V. GROUNDS FOR RELIEF - COUNT I

### TEXAS FINANCE CODE – TEXAS DEBT COLLECTION ACT (TDCA)

43. Plaintiff repeats, re-alleges, and incorporates by reference all of the foregoing Paragraphs, as if rewritten here in their entirety.

44. Defendant has violated the Texas Finance Code in numerous ways, including, but not limited to, the following sections:

    a) Tex. Fin. Code § 392.301(a)(8) prohibits Defendant from threatening to take an action prohibited by law. Inasmuch as the bankruptcy discharge injunction prohibits anyone from attempting to collect debts discharged in bankruptcy *in personam*; and inasmuch as the common law protects Plaintiff's privacy rights; Defendant's post-discharge actions against

-10-

    Plaintiff at issue, including sending her statements, notices and correspondences on the discharged Account after the settlement of the prior lawsuits, were threats to illegally collect from her *in personam* the discharged debt and premiums for hazard insurance on the surrendered Property, and were violations of the TDCA;

 b) Tex. Fin. Code § 392.304(a)(13) prohibits representing that a consumer debt may be increased by the addition of attorney's fees, investigation fees, service fees, or other charges, if a written contract or statute does not authorize the additional fees or charges.  Here, 11. U.S.C. § 524(a) prohibited Defendant from collecting on the Account after the discharge of the debt in Plaintiff's Bankruptcy Case when the permanent discharge injunction was in effect; yet, Defendant represented to Plaintiff that additional periodic fees and costs would continue to be charged to the Account post-discharge.  In the statements at issue, the amount of "Assessed Expenses" reflected in the "Payment Amounts" sought included post-discharge fees accruing and being assessed to the Account every month, as well as in the notices at issue by Defendant's representations to Plaintiff that she was liable for post-discharge and post-surrender hazard insurance on the Property, in violation of the TDCA; and

 c) Tex. Fin. Code § 392.304(a)(19) prohibits Defendant's use of false representations or deceptive means to collect a debt, for the reasons stated in the preceding paragraphs (a) and (b), Defendant intentionally tried to coerce or deceive Plaintiff into paying the discharged debt, while Defendant knew the Account was included in and discharged in Plaintiff's bankruptcy, rendering the debt legally uncollectible from Plaintiff *in personam*.

45. Although several of the statements, notices and letters included messages that they were sent for informational purposes this was contradictory to the overwhelming majority of the language in the documents, which unequivocally sought payment from Plaintiff and, at best, any such ambiguous messages were ineffective and would only confuse and harass the receiver.  Moreover, the statements included stated payment amounts, due by a specific date, and these amounts continued to increase each month.  They also included payment instructions, detachable, self-addressed coupons, and return envelopes, clearly to deceive and coerce payment from Plaintiff.

46. Under Tex. Fin. Code Ann. § 392.403, Defendant's actions make it liable to Plaintiff for actual damages, statutory damages, injunctive relief, costs, and reasonable attorney's

fees. Also, Plaintiff's injuries resulted from Defendant's malice, actual fraud and/or willful and intentional misconduct, entitling Plaintiff to punitive damages.

47. Because of Defendant's conduct, Plaintiff was forced to hire counsel to pursue this action, and Plaintiff's recoverable damages include her reasonable attorney's fees incurred in prosecuting this claim.

### VI. GROUNDS FOR RELIEF - COUNT II

#### INVASION OF PRIVACY

48. Plaintiff repeats, re-alleges, and incorporates by reference all of the foregoing paragraphs, as if rewritten here in their entirety.

49. Defendant's sending Plaintiff the offensive and harassing communications, statements and notices regarding the Account after such Account had been discharged in her Bankruptcy Case and over 12 years after she surrendered the Property, constitute invasions of Plaintiff's privacy. Plaintiff had a reasonable expectation not to be harassed by Defendant after her bankruptcy discharge, cease and desist requests and after the prior lawsuits, as she believed she was protected by the permanent discharge injunction from contact from Defendant in its efforts to coerce payment from her personally. In fact, Defendant acknowledged to Plaintiff that it received her cease and desist requests and would stop contacting her; yet, this representation was false, and Defendant continued to invade Plaintiff's privacy and make harassing contacts with her and attempt to collect on the discharged debt from her. Following that, Plaintiff has filed and settled two lawsuits with Defendant and despite these facts, Defendant will not stop its collection efforts and its invasions of Plaintiff's privacy.

50. Plaintiff's injuries resulted from Defendant's malice, entitling Plaintiff to recover exemplary damages pursuant to Texas Civil Practice and Remedies Code § 41.003(a).

## VII.  GROUNDS FOR RELIEF - COUNT III

### FAIR DEBT COLLECTION PRACTICES ACT (FDCPA)

51.     Plaintiff realleges and incorporates herein all of the above paragraphs as if set forth herein in their entirety.

52.     The FDCPA is a comprehensive statute which prohibits a catalog of activities in connection with the collection of debts by third parties.  *See* 15 U.S.C. § 1692 *et seq*.  The FDCPA imposes civil liability on any person or entity that violates its provisions, and establishes general standards of debt collector conduct, defines abuse, and provides for specific consumer rights.  *See* 15 U.S.C. §1692k.  The operative provisions of the FDCPA declare certain rights to be provided to or claimed by debtors, forbid deceitful and misleading practices, prohibit harassing and abusive tactics, and proscribe unfair or unconscionable conduct, both generally and in a specific list of disapproved practices.

53.     In particular, the FDCPA broadly enumerates several practices considered contrary to its stated purpose and forbids debt collectors from taking such action.  The substantive heart of the FDCPA lies in three broad prohibitions.  First, a "debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt."  15 U.S.C. §1692d.  Second, a "debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt."  15 U.S.C. §1692e.  Third, a "debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt."  15 U.S.C. §1692f.  The FDCPA is designed to protect consumers from unscrupulous collectors, whether or not there exists a valid debt, broadly prohibits unfair or unconscionable collection methods, conduct which harasses, oppresses or abuses any debtor, and any false, deceptive or misleading statements in connection with the collection of a debt.

54. In enacting the FDCPA, the United States Congress found that "[t]here is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors," which "contribute to the number of personal bankruptcies, to marital instability, the loss of jobs, and to invasions of individual privacy." 15 U.S.C. §1692a. Congress additionally found existing laws and procedures for redressing debt collection injuries to be inadequate to protect consumers. *See* 15 U.S.C. §1692b.

55. Congress enacted the FDCPA to regulate the collection of consumer debts by debt collectors. The express purpose of the FDCPA is to "eliminate abusive debt collection practices by debt collectors, to insure debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. §1692e.

56. The FDCPA is a strict liability statute, which provides for actual and statutory damages upon the showing of a single violation. *See Bentley v. Great Lakes Collection Bureau*, 6 F.3d 60, 62-3, (2d Cir. 1993); *see also Taylor v. Perrin, Landry, DeLaunay & Durand*, 103 F.3d 1232 (5th Cir. 1997). "Because the Act imposes strict liability, a consumer need not show intentional conduct by the debt collector to be entitled to damages." *Russell v. Equifax A.R.S.*, 74 F.3d 30 (2d Cir. 1996); *see also Gearing v. Check Brokerage Corp.*, 233 F.3d 469 (7th Cir. 2000) (holding unintentional misrepresentation of debt collector's legal status violated FDCPA); *Clomon v. Jackson*, 988 F.2d 1314 (2d Cir. 1993).

57. The FDCPA is a remedial statute and therefore must be construed liberally in favor of the debtor. *Sprinkle v. SB&C Ltd.*, 472 F. Supp. 1235 (W.D. Wash. 2006). The remedial nature of the FDCPA requires that courts interpret it liberally. *Clark v. Capital Credit & Collection Services, Inc.*, 460 F.3d 1162 (9th Cir. 2006). "Because the FDCPA, like the Truth in Lending

Act (TILA) 15 U.S.C. §1601 *et seq.*, is a remedial statute, it should be construed liberally in favor of the consumer." *Johnson v. Riddle*, 305 F.3d 1107 (10th Cir. 2002).

58.     The FDCPA is to be interpreted in accordance with the "least sophisticated consumer" standard. *See Brown v. Card Serv. Ctr*, 464 F.3d 450, 453 fn1 (3d Cir. 2006); *Graziano v. Harrison*, 950 F.2d 107, 111, fn5 (3rd Cir. 1991). The FDCPA was not "made for the protection of experts, but for the public - that vast multitude which includes the ignorant, the unthinking, and the credulous, and the fact that a false statement may be obviously false to those who are trained and experienced does not change its character, nor take away its power to deceive others less experienced." *Id*. The least sophisticated consumer standard serves a dual purpose in that it ensures protection of all consumers, even naïve and trusting, against deceptive collection practices, and protects collectors against liability for bizarre or idiosyncratic interpretations of collection notices. *See Clomon*, 988 F.2d at 1318.

59.     To prohibit deceptive practices, the FDCPA, at 15 U.S.C. § 1692e, outlaws the use of false, deceptive, and misleading representations or means in connection with the collection of any debt and sets forth a non-exhaustive list of certain *per se* violations of false and deceptive collection conduct. *See* 15 U.S.C. § 1692 e(1)-(16).

60.     All of Defendant's post-discharge actions at issue, described hereinabove in the above paragraphs are the manifestation of its practices and policies to ignore the provisions of the Bankruptcy Code applicable to it and illegally collect or attempt to collect debts that have been discharged in bankruptcy *in personam* from unsophisticated debtors. Moreover, for the same reasons stated in the preceding paragraphs, Defendant's actions were deceitful, misleading, harassing, and unconscionable, all by design and taken intentionally against Plaintiff, in violation of the FDCPA.

## VIII. GROUNDS FOR RELIEF - COUNT IV

### VIOLATION OF THE DISCHARGE INJUNCTION

61. Plaintiff repeats, re-alleges, and incorporates by reference all of the foregoing paragraphs, as if set forth here in their entirety.

62. At all material times, Defendant had actual knowledge of Plaintiff's Bankruptcy Case and of the discharge of the debt on the Account.

63. Defendant's actions were willful acts in furtherance of its efforts to collect the discharged debt from Plaintiff, in violation of the discharge injunction imposed by 11 U.S.C. § 524(a). Further, Defendant's acts were harassing and attempts to coerce and deceive Plaintiff to pay the discharged debt. Defendant's failure to comply with the aforesaid laws, despite Defendant's being on notice of Plaintiff's Bankruptcy Case and discharge and the effect of Plaintiff's discharge, illustrates Defendant's utter contempt for federal law and the discharge injunction.

64. The post-discharge actions of Defendant constitute harassment and coercive and/or deceptive actions taken to collect a discharged debt from Plaintiff, in gross violation of the discharge injunction imposed by 11 U.S.C. § 524(a)(1)-(3).

65. Specifically, Defendant violated that part of the Bankruptcy Court's Discharge Order issued pursuant to 11 U.S.C. § 524(a)(2) that "operates as an injunction against the commencement, or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtors, whether or not the discharge of such debt is waived…."

66. Defendant knowingly and willfully violated the orders and injunctions of the Bankruptcy Court issued in the bankruptcy filed by Plaintiff. After this *prima facie* showing by Plaintiff, the duty falls on Defendant to show, as its only defense, a present inability to comply

with the orders and injunctions of the Bankruptcy Court, which inability must go beyond a mere assertion of inability.  Failing a showing by Defendant of its present inability to comply with the orders and injunctions of the Bankruptcy Court, Plaintiff must prevail on her claims, and Defendant must be held liable for knowingly and willfully violating the orders and injunctions of the Bankruptcy Court.  Any defense put forth by Defendant in this proceeding can only constitute a good faith exception, as no other reasonable explanation can be made for the conduct and actions of Defendant.  Any allegation of a good faith exception should not be allowed.

67.	There are no exceptions under 11 U.S.C. § 524, other provisions of the United States Bankruptcy Code, or other applicable law that would permit Defendant's conduct, which was in blatant disregard of the discharge injunction.

68.	The orders and injunctions of the Bankruptcy Court cannot be waived, except by way of a properly filed and approved reaffirmation agreement, motion, stipulation or complaint, none of which occurred here.  No waiver of the orders or injunctions of the Bankruptcy Court has occurred.

69.	Also, there is no requirement of mitigation on the part of Plaintiff that is relevant to Defendant's violations of the orders and injunctions of the Bankruptcy Court.  Any burdening of Plaintiff with an obligation to police the misconduct of Defendant would be a complete derogation of the law.  It is well-settled that each party to an injunction or order of the Court is responsible for ensuring its own compliance with the injunction or order and for bearing the cost of compliance.  Any attempt by Defendant to mount such a defense in this proceeding would constitute a collateral attack on the injunctions and orders of the Bankruptcy Court, which is prohibited.  Any such defense put forth by Defendant in this case can only constitute a claim of mitigation, as no other reasonable explanation can be made for the conduct and actions of Defendant.  No defense of failure to mitigate should be allowed.

70.     Plaintiff has been injured and damaged by Defendant's actions, and Plaintiff is entitled to recover judgment against Defendant for actual damages and punitive damages, plus an award of costs and reasonable attorney's fees, for Defendant's violations of 11 U.S.C. § 524 and pursuant to the Court's powers under 11 U.S.C. § 105.

### IX. VICARIOUS LIABILITY/*RESPONDEAT SUPERIOR*

71.     Plaintiff believes that, after reasonable discovery, she will be able to show that all actions at issue were taken by employees, agents, servants, or representatives of Defendant, the principal, within the course and scope of such individuals' (or entities') express or implied authority, through employment, agency, or representation, which imputes liability to Defendant for all such actions under the doctrine of *respondeat superior* and/or vicarious liability.

### X. DAMAGES

72.     In addition to any damages previously stated hereinabove, the conduct of Defendant has proximately caused Plaintiff past and future monetary loss; past and future mental distress, emotional anguish and a discernable injury to Plaintiff's emotional state; and other damages, evidence for all of which will be presented to the jury.  Moreover, dealing with the consequences of Defendant's actions has cost Plaintiff time and mental energy, which are precious to her.

73.     At all relevant times, Defendant knew, and it continues to know, that, pursuant to a discharge order granted by a U.S. Bankruptcy Court, discharged debts are no longer legally collectible from the discharged debtor personally, but Defendant made a knowing, willful, and malicious corporate decision to act contrary to its knowledge of bankruptcy law, to attempt to collect on the debt it knew had been discharged as a result of Plaintiff's Bankruptcy Case. Moreover, Defendant had no right to engage in any of its actions at issue.

74.     Plaintiff believes that, after reasonable discovery in this case, she will be able to show that all actions taken by, or on behalf of, Defendant were conducted maliciously, wantonly,

recklessly, intentionally, knowingly, and/or willfully, with the desire to harm Plaintiff and/or with the actual knowledge that such actions were in violation of the law.

75. Plaintiff believes that, after reasonable discovery, she will be able to show that Defendant has been involved in numerous disputes involving complaints about the type of conduct at issue here; nevertheless, Defendant, intentionally and knowingly, has refused to correct its policies and procedures to comply with applicable laws, of which laws it is well-aware.

76. Plaintiff believes that, after reasonable discovery, she will be able to show that Defendant has engaged in a pattern and practice of wrongful and unlawful behavior, in accordance with its established policies and procedures, with respect to knowingly, willfully, intentionally, and maliciously attempting to collect on debts discharged in bankruptcy, including, but not limited to, contacting and harassing discharged debtors, conducting impermissible account reviews, and furnishing inaccurate and misleading information to the CRAs about accounts discharged in bankruptcy. Accordingly, Defendant is subject to punitive damages, statutory damages, and all other appropriate measures necessary to punish and deter similar future conduct by Defendant. Moreover, Plaintiff's injuries resulted from Defendant's malice, and/or willful and intentional misconduct, entitling Plaintiff to punitive damages.

77. Due to Defendant's conduct, Plaintiff was forced to hire counsel, and her damages include her reasonable attorneys' fees incurred in prosecuting her claims.

WHEREFORE, PREMISES CONSIDERED, Plaintiff Carol Diane Sydnor prays the Court:

A. Enter judgment in favor of Plaintiff and against Defendant for statutory damages, actual damages, costs, and reasonable and necessary attorney's fees for Defendant's violations of the TDCA, her privacy rights, the FDCPA and the discharge injunction;

  B. Find that appropriate circumstances exist for an award of punitive damages to Plaintiff;

  C. Award Plaintiff pre-judgment and post-judgment interest as allowed by law; and

  D. Grant such other and further relief, in law or equity, to which Plaintiff might show she is justly entitled.

         Respectfully submitted,

         */s/ James J. Manchee*
         James J. Manchee
         State Bar Number 00796988
         jim@mancheelawfirm.com
         5048 Tennyson Parkway, Suite 250
         Plano, Texas 75024
         (972) 960-2240 (telephone)
         (972) 233-0713 (fax)

         COUNSEL FOR PLAINTIFF

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

January 5, 2021       */s/ James J. Manchee*
  Date         James J. Manchee